UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00588-RJC-DCK

| | |
|---|---|
| FS FOOD GROUP LLC *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| THE CINCINNATI INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**THIS MATTER** comes before the Court on Defendant The Cincinnati Insurance Company's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint (DE 15) and the Magistrate Judge's Memorandum and Recommendation ("M&R") (DE 20). For the reasons stated herein the Court **ADOPTS** the Magistrate Judge's M&R.

I.  BACKGROUND

   A.  Factual Background

Accepting the factual allegations of the Amended Complaint (DE 12) as true, Plaintiffs[1] own and operate restaurants and catering companies in North and South Carolina. (DE 12 at 1-2). Plaintiffs entered into an insurance contract with The Cincinnati Insurance Company ("Cincinnati") on August 3, 2019, policy number ECP 054 61 56 ("Policy"), with a policy period effective August 3, 2019 to August 3, 2022. (DE 12 at 6; DE 1-2 at 3). The Policy provides that

---

[1] Plaintiffs include FS Food Group, LLC; Plate Perfect Catering LLC; Mama Ricotta's Kingspointe, LLC; Midwood Smokehouse Holdings, LLC; Midwood Smokehouse of Ballantyne, LLC; Midwood Smokehouse of Birkdale, LLC; Midwood Smokehouse of Cross Hill, LLC; Midwood Smokehouse of Park Road, LLC; Midwood Smokehouse, LLC; PTT, LLC; Yafo Central, LLC; Yafo East, LLC; Yafo Morrison, LLC; and Yafo Restaurant Holdings, LLC. (DE 12 at 1).

Defendant will indemnify Plaintiffs' covered losses, "including, but not limited to, business income losses at the Covered Properties, which are owned, managed, and/or controlled by Plaintiff." (DE 12 at 2). Covered Properties are defined by the Policy to include Plaintiffs' business locations. (DE 1-1 at 25; DE 12 at 3-5).

The Policy is an "all risk" policy, which "provides coverage for all non-excluded business losses." (DE 12 at 2). Section A of the Policy provides that Defendant "will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." (DE 1-1 at 25). The Policy defines "loss" as "accidental physical loss or accidental damage." (DE 1-1 at 60). The Policy defines "premises" as "the Locations and Buildings described in the Declarations." (DE 1-1 at 61). The Policy does not define "damage" or include a virus exclusion provision. (DE 12 at 8).

The Policy's Coverage Extensions section includes a provision for Business Income, Extra Expense, and Civil Authority, as follows:

**(1) Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."[2] The "suspension" must be caused by direct "loss" to the property at a "premises" caused by or resulting from any Covered Cause of Loss.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:
    (a) Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the "premises"; and
    (b) Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

---

[2] Under the Policy, "Period of Restoration" means the period of time that either (a) begins at the time of direct "loss" or (b) ends on the earlier of: (1) The date when the property at the "premises" should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location. Doc. 1-1 at 60-61.

2

**(2) Extra Expense**

(a) We will pay Extra Expense you sustain during the "period of restoration." Extra expense means necessary expenses you sustain (as described in Paragraphs (2)(b), (c) and (d)) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

(b) If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph (2)(c)) to:
    1) Avoid or minimize the "suspension" of business and to continue "operations" either:
        a) At the "premises"; or
        b) At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or
    2) Minimize the "suspension" of business if you cannot continue "operations".

(c) We will also pay expenses to:
    1) Repair or replace property; or
    2) Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

(d) Extra Expense does not apply to "loss" to Covered Property as described in the BUILDING AND PERSONAL PROPERTY COVERAGE FORM.

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits its access to the "premises", provided that both of the following apply:
    (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
    (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time

of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:
1) 30 consecutive days after the time of that action; or
2) When your "Business Income" coverage ends; whichever is later.

(DE 1-1 at 40-41). The Policy provides separate Business Income, Extra Expense, and Civil Authority coverage provisions. (See DE 1-1 at 93-94).

On March 10, 2020, North Carolina Governor Roy Cooper declared a state of emergency in response to the COVID-19 pandemic. (DE 1-3). On March 17, 2020, Governor Cooper issued Executive Order No. 118 limiting the "sale of food and beverages to carry-out, drive-through, and delivery only." (DE 1-4 at 4). On March 27, 2020, Governor Cooper issued a "Stay at Home" Order, which permitted restaurants to serve food "for consumption off-premises." (DE 1-5 at 10). All indoor dining services were suspended until May 20, 2020 when North Carolina commenced Phase 2 of its reopening plan. (DE 1-7 at 8). Under Phase 2, restaurants could operate indoor dining at fifty percent occupancy. (DE 1-7 at 8). South Carolina Governor Henry McMaster issued similar executive orders. (DE 12 at 2).

In response to the executive orders issued by Governors Cooper and McMaster, Plaintiffs suspended or reduced their business operations. (DE 12 at 2). On June 10, 2020, FS Food Group submitted claims to Cincinnati for its ten locations and its catering company. (DE 1-2 at 2). The claims were for "business interruption, civil authority, and/or extra expense coverage to recoup substantial, ongoing financial losses directly attributed to a series of COVID-9 closure orders." (DE 12 at 2).

On September 14, 2020, Defendant notified Plaintiffs by letter that their losses were not covered under the Policy, explaining that:

The Cincinnati policy provides coverage for direct physical loss or damage to Covered

4

> Property at the premises. This direct physical loss or direct physical damage must be to property at the covered premises. Cincinnati's investigation has found no evidence of direct physical loss or damage at your premises. Similarly, there is no evidence of damage to property at other locations, precluding coverage for orders of civil authority.

(DE 1-2 at 2). Plaintiffs contend coverage under the Policy exists "as a direct result of the COVID-19 pandemic" and the executive orders issued by the Governors of North and South Carolina that limited access to restaurants and closed in-person dining. (DE 12 at 16). Specifically, Plaintiffs allege that they "have incurred, and continue to incur [] direct physical loss of or damage to property, a substantial loss of business income and additional expenses covered under the Policy." *Id.*

### B. Procedural Background

Plaintiffs filed this action seeking a declaratory judgment that the Policy provides coverage for their "covered losses caused by loss of access to the Insured Premises, including business income, extra expense, contamination, civil authority" on October 26, 2020. (DE 12 at 20). Plaintiffs also brought a Breach of Contract claim "on the basis that Defendant's denial of coverage runs afoul of the language of the policy and/or public policy." (DE 12 at 3, 16-18)

On January 22, 2021 Plaintiffs filed an Amended Complaint. (DE 12). On February 5, 2021, Cincinnati filed its Motion to Dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (DE 15). The Magistrate Judge entered an M&R recommending the Court grant Cincinnati's Motion to Dismiss for failure to state a claim upon which relief can be granted. (DE 20). Plaintiffs objected to the M&R, arguing the M&R incorrectly found no ambiguity in the Policy terms. (DE 21 at 4).

### II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id*. Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id*. at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

The parties agree that the Court applies North Carolina law to interpret the language in the Policy. *See Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 465 (N.C. 2000) ("the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract"); *Stahle v. CTS Corp*., 817 F.3d 96, 99-100 (4th Cir. 2016); *Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co. of S.C.*, 433 F.3d. 365, 369 (4th Cir. 2005). Under North Carolina law, "[t]he party seeking coverage under an insurance policy bears the burden "to allege and prove coverage." *N. Carolina Farm Bureau Mut. Ins. Co. v. Martin by & through Martin*, 851 S.E.2d 891, 895 (N.C. 2020). The plain language of the insurance policy governs its interpretation. *Id.* "Where no definition for a term is contained in the policy,

7

unambiguous terms will be given the meaning afforded them in ordinary speech unless the context indicates that another meaning was intended." *Guyther v. Nationwide Mut. Fire Ins. Co.*, 428 S.E.2d 238, 241 (N.C. Ct. App. 1993).

Ambiguities in the terms of the policy are construed against the insurer. *See Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 612 (N.C. 2010). The provision must be "fairly and reasonably susceptible to multiple constructions" to be ambiguous. *N. Carolina Farm Bureau Mut. Ins. Co.*, 851 S.E.2d at 895 (internal quotations and citation omitted). An ambiguity does not exist simply because "plaintiff makes a claim based upon a construction of [the policy] language which the company asserts is not its meaning." *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970). Lastly, the insured bears the burden of showing that its claim fits within the policy. *See Hobson Const. Co. v. Great Am. Ins. Co.*, 322 S.E.2d 632, 635 (N.C. Ct. App. 1984).

**A.     Alleged Ambiguity in the Business Income and Extra Expense Provisions**

Plaintiffs object that the M&R found no ambiguity in the Policy's Business Income and Extra Expense provisions. (DE 21 at 4). Plaintiffs argue that the term "loss" in the Business Income and Extra Expense provisions is ambiguous because the definition of "loss" provided in the Policy is reasonably susceptible to different meanings. *Id*.

For Business Income coverage to exist under the Policy, the suspension of business operations "must be caused by direct loss to property at the premises caused by or resulting from any Covered Cause of Loss." (DE 1-1 at 40, 93) (internal quotation marks omitted). Likewise, for Extra Expense coverage to exist, there must be "direct loss to property caused by or resulting from a Covered Cause of Loss." (DE 1-1 at 41, 93) (internal quotation marks omitted). "Loss" is defined as "accidental physical loss or accidental physical damage." (DE 1-1 at 60). Plaintiffs assert that

8

because the Policy's definition of "loss" separates "accidental physical loss" from "accidental physical damage" by the word "or," the terms must have different meanings. (DE 16 at 19).

Plaintiffs also argue that "[o]ther courts have reviewed the same, or substantially similar, policy language and found ambiguity." (DE 21 at 4-6). To support this assertion, Plaintiffs cite to multiple cases that do not apply North Carolina law and, notably, only one case that applies North Carolina law: *North State Deli v. The Cincinnati Insurance Co.* No.20-CVS-02569, 2020 WL 6281507 (N.C. Super. Oct. 9,2020). *North State Deli* analyzed a Cincinnati policy with similar language to that at issue here and found the term "direct physical loss" ambiguous because it was reasonably susceptible to different meanings. *Id*. at *3. In reaching this conclusion, *North State Deli* used definitions from Merriam-Webster, Webster's Dictionary, and Black's Law Dictionary. *Id*. at *3. Because *North State Deli* found the term "direct physical loss" ambiguous, Plaintiffs argue that this Court must resolve the alleged ambiguity in favor of the insured. (DE 21 at 5).

Defendant argues that *North State Deli* is not a reasonable decision because it ignores the North Carolina Court of Appeals' binding precedent established in *Harry's Cadillac-Pontiac-GMC Truck Company v. Motors Insurance Corp*, 486 S.E.2d 249 (N.C. Ct. App. 1997) (holding the term "direct physical loss" as listed in an insurance contract for business interruption coverage required actual physical loss or damage to property and did not apply where the insured's loss of income was caused by a snowstorm that only prevented access to the insured's covered premises and did not cause any physical loss or damage to the covered premises). This is akin to the impact of COVID-19, which did not cause any physical loss or harm to property, but only prevented normal access to establishments. Defendant also cites *Summit Hospitality Group, LTD v. Cincinnati Ins. Co.*, a recent case from the Eastern District of North Carolina applying North Carolina law, to support its argument that physical loss or damage to the business premises is

9

required to trigger business interruption insurance coverage. *Summit Hospitality Group, LTD. V. Cincinnati Ins. Co.*, No. 5:20-CV-254-BO, 2021 WL 831013 (E.D.N.C. Mar. 4, 2021) (holding that a business interruption insurance policy requiring direct physical loss or damage was not triggered by COVID-19 closure and access restriction orders). *Summit Hospitality* is especially persuasive because the court applied North Carolina law to decide an ambiguity challenge to contract language substantially similar to the language at issue here.

The Court agrees with the M&R's finding, which is supported by North Carolina precedent, that the Business Income and Extra Expenses provisions are not ambiguous. Although the Policy does not define "accidental physical loss" or "accidental physical damage," these terms' plain and ordinary meanings require actual, physical damage to the covered premises. The majority of Plaintiffs' cited cases are unpersuasive because they do not apply North Carolina law. Moreover, Plaintiffs' reliance on *North State Deli*—the only case cited that applies North Carolina law—is misplaced. The definition of "direct physical loss" relied on in *North State Deli* ignores binding North Carolina precedent that physical loss or damage is required to recover business interruption coverage.

Plaintiffs' argument that the terms "accidental physical loss" and "accidental physical damage" must have different meanings because of their separation by the word "or" is also incorrect. (DE 16 at 19). While "or" may join a disjunctive list and create alternatives, there are nuances when "or" is used in different contexts. Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 116 (1st ed.2012). For instance, when "or" is used to introduce synonyms or definitional equivalents, the second item listed is nonrestrictive. *Id.* at 122. Here, "or" is used in the Policy's definition of loss to introduce synonyms or definitional equivalents: "accidental physical loss or accidental physical damage." (DE 1-1 at 60).

Consequently, the second item listed under the Policy's definition of "loss," "accidental physical damage," is nonrestrictive. *Id*. Furthermore, "physical" is included directly in front of the terms "loss" and "damage" within the Policy's definition of "loss", showing the parties clearly intended the loss or damages to the premises to be physical. Because Plaintiffs fail to allege physical loss or physical damage to any premises caused by COVID-19, Plaintiffs have failed to state a claim that the Business Income and Extra Expense provisions provide coverage.

### B. Alleged Ambiguity in the Civil Authority Provision

Plaintiffs do not specifically object to the M&R's findings regarding the inapplicability of the Civil Authority provision. Under Rule 72(b) of the Federal Rules of Civil Procedure, a district court judge shall make a de novo determination of any portion of an M&R to which a specific written objection has been made. A party's failure to make a timely objection is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). Because no objection to the M&R's findings regarding the inapplicability of the Civil Authority provision have been filed, and the time for doing so has passed, the parties have waived their right to de novo review of these findings. Nevertheless, this Court has conducted a full review of the M&R and other documents of record and, having done so, the Court agrees with the M&R that for coverage to exist under this provision access at covered locations must, at a minimum, be denied. (DE 20 at 14). The Policy plainly states that for coverage to exist under the Civil Authority provision "[a]ccess to the area immediately surrounding the damaged property" must be "prohibited by civil authority as a result of the damage." (DE 1-1 at 41, 94).

As previously explained, there was no physical loss or damage to the premises to trigger the Civil Authority provision. Nonetheless, the out of state case law propounded by Plaintiffs is unavailing. Plaintiffs argue that the term "prohibit" is ambiguous because other courts have found

11

that "prohibit" does not require a total probation of access to covered locations. (DE 21 at 7-8). In support of this assertion, Plaintiffs cite a Pennsylvania state court decision and a federal decision from the Northern District of Alabama. *Id.* However, neither case is persuasive as neither applies North Carolina law.

Here, Governor Cooper's and McMaster's executive orders did not prohibit or deny access to Plaintiffs' covered properties. (DE 1-3, 1-4, 1-5, 1-12). Instead, they encouraged the public to stay at home. *Id.* Applying North Carolina law to its interpretation of a similar Civil Authority provision, the Eastern District of North Carolina in *Summit* held that "[a]lthough the executive orders identified in the complaint may have restricted access to plaintiff's business locations, for example by preventing or restricting in-person dining, restricted access is not the same as denied access." *Summit,* 2021 WL 831013, at *4. Because Plaintiffs fail to allege that the orders prohibited or denied access to their premises, Plaintiffs have failed to state a claim that the Civil Authority provision provides coverage.

For the foregoing reasons, the Court agrees that Plaintiffs' claim for breach of contract against Cincinnati should be dismissed.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

    a. The Magistrate Judge's M&R (DE 20) is **ADOPTED**; and

    b. Defendant Cincinnati's Motion to Dismiss for Failure to State a Claim (DE 15) is **GRANTED.**

The clerk is directed to close this case.

Signed: February 8, 2022

*Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
United States District Judge